[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Thomas F. Cullen, hereinafter called the "husband" and the defendant, Kathryn N. Cullen, hereinafter called the "wife", were married in Long Beach, New York on August 15, 1976. The wife's maiden name was Nugent. Both of the parties have lived in Connecticut for at least twelve months next preceding the filing of this complaint.
The parties have three children issue of this marriage, namely: Kerry A. Cullen born August 1, 1980, Matthew T. Cullen born November 3, 1981, and Brooke P. Cullen born March 10, 1989. There are no other living children born to the wife since the date of the marriage. No individual or agency of the State of Connecticut is contributing to the support of either of the parties or their children.
The husband is age 37 and has a Bachelor's degree, a Master's degree, and a law degree from Syracuse University in 1985. He has been an associate at the firm of Winthrop, Simpson, et al, since March of 1988 and works in the Stamford office.
The parties own jointly their home in Fairfield at 25 Elderberry Lane, Fairfield, Connecticut. The property was purchased in December of 1989 for $290,000.00 with a mortgage of $232,000.00. The cash needed to acquire the property was approximately $58,000.00. It is clear that the parties used $10,000.00 of their savings to acquire this. There is a dispute between the parties as to what contribution the husband's mother made. It is also clear that the net proceeds from the sale of the prior residence of $14,309.36 went into this purchase.
The wife's testimony is that the husband's mother lent somewhere between $20,000.00 and $25,000.00 to make the CT Page 6216 purchase. The husband's testimony was that it was $35,000.00. The documents that were introduced at trial seem to indicate perhaps even a higher number. Although there is a dispute as to the mother's contribution, it is clear that the property could not have been purchased without the assistance from the mother.
The house is more than adequate for the parties. It consists of approximately 2100 square feet and is described as a four bedroom-colonial with a two car garage on approximately a one third acre, nicely landscaped lot.
The wife received a Bachelor's degree and a Master's degree from Michigan State University. The parties spent the early part of their marriage in Michigan where they obtained their Master's degrees. They agreed that it was in their best interests for the husband to obtain a Master's degree. After that, they located to Virginia where they lived and worked at Radford College. Thereafter, the parties relocated to Vermont where they purchased a home. Thereafter, the parties relocated to Syracuse where the husband attended law school and obtained his law degree. The wife worked both out of the house and in the house during the time they were in Syracuse. They lived in the married student housing complex that was certainly below standard for the first year. An apartment for the next years was adequate at best.
After the husband's graduation from law school, he was employed as an associate at the firm of Cummings and Lockwood. The tax returns indicate that for 1986 he had gross earnings of $46,115.00; for 1987 he had gross earnings, as shown on Exhibit H, of $48,779.00; in 1988, as shown on Exhibit G, he had gross earnings of $80,618.00 which was a combination of Cummings and Lockwood and Winthrop, Simpson money. When he changed jobs, he was given a $10,000.00 signing bonus. In 1989, as shown on Exhibit F, he earned $80,607.00 gross salary. In 1990, as shown on Exhibit E, he earned $97,608.00 gross. In 1991 he earned $107,000.00 which included a bonus for 1990 of $10,000.00. In 1992 he has received a $20,000.00 gross bonus, net of approximately $13,750.00. That money is presently being held $1,500.00 in the wife's banking account and $10,583.00 in the husband's security bank account. The husband's base salary presently at his law firm is $106,000.00. He contemplates a raise in 1993 of approximately $4,000.00 which would bring him to $110,000.00. Bonus at the firm is discretionary and requires certain essential ingredients, one of which is that he must bill 2,000 hours to be considered. He is engaged in the practice of corporate law.
It is clear that since the marriage the wife has basically followed the husband's career. When the moves were CT Page 6217 made, they were made to satisfy the husband's career objectives. Law school was something that he wanted and she agreed to.
The wife has had some experience in telemarketing. Her children will be in full time school in September of 1995. She has done, to date, a substantial amount of volunteer work in the community involving the children. She has not held a professional job in ten years. She has indicated that she will need courses to obtain certification to be licensed in Connecticut to teach. Her career involved continuing education and student government and student programs. She has been the primary caretaker of the children and has maintained the household.
It is clear to this court that at best she can obtain part time employment while the children are not full time in school. She is bright, intelligent, personable and has high academic credentials. At some point she will be able to join the work force full time. At this time she contemplates that she would be able to get back into the work force in September of 1995. The degree to which she will enter the force at that time is disputed between the parties. This court does not have a crystal ball and does not know what the situation will be, but when she does enter the work force again and begins to earn, that will be a substantial change in circumstances allowing the husband to petition the court for relief at that time except as hereinafter provided, if he deems it appropriate.
It is clear that both parties have contributed to the support of the family in one fashion or another. It is clear that they both contributed to the economic support of the family until 1986 when the husband became a lawyer. Subsequent to that time, it is clear that the economic support of the household has been provided by the husband.
It is clear that this marriage has broken down irretrievably. The parties cannot even agree on the basis on which it broke down. There was an attempt to paint the husband as being involved with another woman, but even the wife testified that she did not believe that was a cause of the breakdown. The parties clearly have grown apart since the husband became a lawyer. The wife indicated that it was the husband's fault — he wanted a different life; he wanted to come and go as he wanted and he did not want to have sex with the wife anymore. He told her he no longer wanted her.
The husband's version of the breakdown of the marriage is that no one event broke it down. There were lots of fights over almost every issue that they could conceive of which included the sale of the house, the children, their personal CT Page 6218 relationship and his work.
The court does not allocate fault to either of the parties for the cause of the breakdown.
As the financial affidavits indicate, the parties have incurred some debt as well as have accumulated some assets. The parties disagree on the valuation of the property. Neither party offered an expert to testify as to the value of the property. The debts among family members were, at best, a loose arrangement. Verbal statements were testified to by the parties as to whether the money was owed or not owed or whether it was a gift or not a gift. Documents were introduced in an attempt to evidence what they actually were. It is clear that the arrangements on both sides as to monies advanced by their parents was indeed a loose one, and it would appear to be in the best interests of justice for the parties to have their own responsibilities to their own families.
The wife's health is generally good except for a cataract operation which she needs on the other eye, and she has had some back spasms over the years, and she does have presently lumps in her breast that need further investigation and diagnosis. She had some heart palpitations but that was a year ago. She is presently seeing Dr. Landino, a psychologist, for her emotional health. She has received no diagnosis for any psychosis or neurosis but feels comfortable talking to the doctor and the duration of that treatment is unknown at this particular time.
The children are basically in good health. One of the daughters has some problems with her eyes. She is Kerrie. She has to wear bifocal eyeglasses that are $275.00 per pair and sunglasses in excess of $200.00 and sport glasses in the $250.00 range.
The court has listened to the parties testify and the arguments of their counsel. The court has heard other testimony. The court has reviewed all of the exhibits in the case and the parties' financial affidavits. The court has reviewed both parties' claims for relief and listened to their oral arguments. In addition, the court has taken into consideration all of the criteria set forth in Connecticut General Statutes 46b-81, the assignment of property and transfer of title statute, 46b-82, the alimony statute,46b-84, the child support statute, 46b-62, the attorney's fees statute, and in addition, the court has considered the child support guidelines.
The court, having considered the evidence, applicable CT Page 6219 statutes and their criteria and appropriate case law, enters the following orders:
1. The marriage has broken down irretrievably and it is hereby dissolved.
2. As to custody and visitation, the court adopts the stipulation of the parties put on the record before the case began, which was ordered transcribed and placed in the file.
3. The court has reviewed the net spendable income analysis dated June 12, 1992 (in duplicate) as an aid to the court along with the child support guidelines computations submitted by the parties as an aid to the court at oral argument. Both parties requested that there be an unallocated order of alimony and child support. Accordingly, this court will make an unallocated award.
 The court orders the husband to pay to the wife for her support and the support of the minor children the annual sum of $50,000.00 to be paid monthly $4,166.00 as unallocated alimony and child support. Said amount to be paid on the first day of each and every month commencing on July 1, 1992.
4. In addition, the husband shall pay to the wife from any associate or later any partner bonus he may receive from his employer a sum equal to twenty (20%) per cent of the net bonus after any payroll deductions have been taken by his employer, provided that such additional amount shall not exceed $10,000.00. Payment of the amounts provided hereunder shall be made within fifteen (15) days of the husband's receipt of such bonus. The husband's receipt of a bonus from his employer shall not be deemed a substantial change in circumstances for the purposes of modification. The husband, in addition to providing the amount, shall also provide the documentation received concerning the bonus such as pay stub, letter of bonus and the like.
5. This court has been asked to provide terminable alimony in this case. This court has a wife who has not been in the professional work market for ten years. Accordingly, the court will leave the length of the alimony and the amount to a substantial change in circumstances under our law and a petition to the court by either of the parties. Alimony shall terminate on the death of either party, the remarriage of the wife or cohabitation of the wife under Connecticut statutes. CT Page 6220
6. In order to give the wife incentive to earn during the time that the children are in school and to assist her in reentering the job market, the court will not consider the wife's earnings up to $10,000.00 per year as a ground for the husband to seek modification based on a substantial change in the wife's circumstances as to earnings.
7. The payments provided for under paragraphs three and four above are intended to be taxable income to the wife and deductible income to the husband. If there is any determination by the IRS, or a court of competent jurisdiction to the contrary, the amount of such payments shall first be renegotiated between the parties using their best efforts to resolve it. If they cannot resolve it, they are referred to the Family Relations office for mediation. Thereafter, they may petition the court for relief since it is an uncontemplated substantial change in circumstances as far as this decision is concerned.
8. The court in entering an allocated award has chosen to deviate from the child support guidelines since it would be inequitable and inappropriate. This court has found that it is in the best interests of the children since the family net is increased, and the parties have requested the court to deviate from the guidelines. Other equitable factors also enter into this as well as tax planning consequences.
9. As long as the husband is paying unallocated alimony and support hereunder, he shall be entitled to the available tax exemption for the parties' youngest child. At the time the husband is required to pay child support, he shall be entitled to the available tax exemptions for the parties' three children.
10. The parties jointly own the marital residence at 25 Elderberry Lane, Fairfield, Connecticut. The wife shall have exclusive possession of the marital residence with the children. Said premises shall be listed for sale at the wife's option for a sooner date but shall be listed for sale no later than January 1st, 1996. Said property shall be listed for sale at a price mutually agreed upon and with a broker mutually agreed upon by the parties. This court will keep continuing jurisdiction over this article as it relates to the details of the sale.
 Upon the sale of the marital residence, the net proceeds thereof shall be divided seventy-five (75%) per cent to the wife and twenty-five (25%) per cent to the husband. For the purposes of this order, net proceeds shall mean the CT Page 6221 gross sales price less any payoffs of any mortgages presently on the premises, liens or encumbrances presently on the premises, broker's commission, conveyance taxes, attorneys' fees for closing, recording fees and other customary adjustments at closing.
 Until the marital residence is sold, the wife shall pay and be responsible for payment of the existing first mortgage, real estate taxes and insurance and shall indemnify and hold the husband harmless therefrom. Further, the husband and wife shall not cause any encumbrance or lien to be placed upon the marital residence including, without limitation, any home equity loan, mortgage, second mortgage or similar lien without the express, written consent of the other party.
11. The contents of the marital residence shall be and become the property of the wife except for the items listed on the schedule attached hereto which shall become the property of the husband. The wife shall provide the husband with access to the marital residence for the purpose of removing the items within thirty (30) days of the date of this decree at a time which is mutually agreed. Said items are shown on plaintiff's Exhibit O attached hereto.
12. The husband shall be entitled to claim on his 1992 income tax return all deductible amounts paid by the parties towards the mortgage, interest, real estate taxes, property and income taxes for the period January 1, 1992 through June 30, 1992.
13. The net amount of the husband's 401K plan shall be divided equally by the parties. This court retains jurisdiction for any orders necessary under this article.
14. The total sum of $12,000.00 remaining from the husband's 1991 bonus shall be divided equally by the parties. The wife has already received and holds $1,500.00 and that should be credited to her side of the ledger.
15. All debts on the wife's financial affidavit shall be her sole responsibility and she shall hold the husband harmless therefrom except for the following which he shall pay:
a. one half of the Discover card bill;
b. one half of the J. C. Penny bill;
c. one half of the psychologist's, Dr. Lendino, bill; CT Page 6222
d. all of Dr. Omohundro's outstanding bill;
 e. all of the Adva Care's (anesthesia for eye surgery) bill;
f. all of the Bridgeport Hospital eye surgery bill;
 g. all of the Fairfield Pediatrics' bill for the children;
 h. all of the Internal Medical Associate's bill for the wife;
16. All of the debts shown on the husband's affidavit shall be his sole and exclusive debts and he shall hold the wife harmless therefrom.
17. Neither party shall charge further on the joint credit cards except that the husband will leave the wife with one credit card that she may use and reimburse the husband for any expenses that she makes. In the event that she makes charges on an account that is joint and does not reimburse him, he may deduct that amount from his monthly payment. The wife shall use her best efforts to get a credit card in her own name.
18. Each of the parties shall retain the motor vehicle currently operated by them and shall, except as otherwise provided herein, retain all other assets listed on their respective financial affidavits. The wife's name shall be removed from the joint MSU Federal Credit Union account.
19. For the benefit of the minor children and the wife, the husband shall keep and maintain at his expense life insurance with a death benefit of not less than $300,000.00 with the wife and the minor children designated as equal beneficiaries. The death benefit required hereunder shall be reduced by $75,000.00 upon each of the following occurrences:
a. The termination of alimony hereunder.
 b. The emancipation or death of any of the parties' children.
 The insurance obligation shall terminate entirely at the time of the husband's termination of alimony and support obligations. At no time shall the death benefit be less than $100,000.00 except as provided herein.
CT Page 6223
20. For as long as the husband is obligated to provide child support, he shall at his own expense provide for the benefit of his minor children medical and hospital insurance as available to him through his then employer or its equivalent. If the wife becomes employed and has available to her through her employer medical and hospitalization insurance which is less expensive than that being provided by the husband, the wife shall obtain such insurance for the children in place of the husband's insurance, provided the husband shall reimburse the wife for that portion of the insurance premium attributable solely to the children.
21. All claims for relief filed by the parties not specifically contained herein have been rejected.
EDWARD R. KARAZIN, JR., JUDGE
[EDITORS' NOTE: THE EXHIBIT IS ELECTRONICALLY NON-TRANSFERRABLE.]